THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JULIO LIBARONA ENRIQUENA, Defendant and Appellant. SAME v. SAME.

Nos. 9465 and 9466. Argued June 17, 1942.—Decided June 26, 1942.

*Ernesto Juan Fonfrías,* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The District Attorney of Bayamón swore out two complaints in the Municipal Court of Vega Baja against Julio Libarona Enriquena for violations of the Act to regulate the practice of dental surgery in Puerto Rico, approved on August 8, 1925 (Act No. 75 of 1925, p. 550), and amended by Act No. 31 of April 20, 1929 (p. 198), the violations consisting in that, without being authorized by law to exercise the practice of dental surgery in this island, he did practice said profession in Vega Baja in January 1941, making and placing in the mouth of Andrés Lomba two sets of false teeth, and in March of the same year he offered his services as a dental surgeon, with an office in the house of one Juan Parés, Betances Street, Vega Baja, to the public. There he agreed to perform dental work on Rafael Narváez, María Adorno, and Andrés Román. Through a search warrant the following articles were seized in said office: two sets of wax impressions, fire forceps, a hypodermic needle, metal tweezers, a dental mirror, a file, a small lamp, two wax molds, six pieces of filling, a spactula, a tooth set in gold. These and other objects were placed at the court's disposal through the search warrant.

On December 5, 1941, new trials took place in the District Court of Bayamón, and the accused was found guilty in both cases. He was sentenced to pay a fine of $50 in each case, and if he were unable to do so, he was to serve a day in jail for every dollar that he was unable to pay. He appealed from the judgment, assigning the commission of two errors in the first case and four in the second.

■■ The two errors assigned in the first case are related to the evidence submitted. In one assignment appellant contends that the lower court acted with passion, prejudice, and partiality in the weighing and interpretation of the evidence, and in the other assignment, appellant contends that said evidence, as a matter of law, is insufficient to convict him.

At the beginning of the trial the following happened:

"Mr. Fonfrías: We would be willing to admit that the same evidence which was submitted in the first case would be likewise submitted in the second case; that Mr. Lomba's testimony would be the same as Cano's.

"District Attorney: Counsel for defendant would admit that witness Andrés Lomba would testify that for $30 he made and placed a set of false teeth in Lomba's mouth.

"Mr. Fonfrías: We admit that, that for a sum of money he made a set of false teeth and placed it in Mr. Lomba's mouth.

"The Court: Am I to understand that the stipulation made by the parties is to the effect that this case is submitted on the same evidence brought before this court in the two preceding cases, with the understanding that witness Andrés Lomba, if he had taken the stand, would have testified that this accused made him a set of false teeth and placed it in his mouth for $30?

"Mr. Fonfrías: Exactly.

"The Court: The stipulation of the parties is approved."

Oscar P. Monagas, Secretary to the Board of Dental Examiners, was then called to the stand, and he testified that in the records of the Dental Board the name of the accused Julio Libarona does not appear as having been authorized

to practice dental surgery. All his testimony dealt with the register, and when it seemed that he had finished his testimony, the following happened:

"District Attorney: We submit the book as evidence.

"Mr. Fonfrías: We object to the admission of the evidence offered for the reason that said evidence is incomplete. The witness himself said so.

"The Court: The complaint is for the violation of the Act which regulates the practice of dental surgery in Puerto Rico; that act was effective in 1905, the register which is offered as evidence dates from that time on; from the time that the act was approved and began to operate."

Counsel for the defense intervened, and the witness insisted that the accused was not registered as a dentist.

Pursuant to the stipulation, the testimony of José Cano Delgado was brought into the record. He had testified that the accused had fixed his set of false teeth by inserting a few teeth that were missing. He had been charged eighteen dollars.

It is impossible for us to understand how charges of passion, prejudice, or partiality against the judge of the lower court could be sustained. It is said that in one of the two cases which are mentioned in the stipulation, the accused was found not guilty, and that he should have been likewise found not guilty in this case, for the reason that the new witness, Lomba, was to testify in the same fashion as Cano, and the testimony of Cano was deemed insufficient.

Such is not the true situation. The stipulation, as modified by the district attorney and accepted by counsel for the defense, was to the effect that Lomba would testify that the accused had made and adjusted into his mouth a set of false teeth for a price of thirty dollars; and that act alone clearly constitutes a violation of the law when committed by an unauthorized person.

Appellant insists in his contention that there was not sufficient evidence submitted to find him guilty because the

register brought into the court by witness Monagas, although offered as evidence by the district attorney, was never admitted by the court.

In analyzing the evidence submitted, we transcribed from the record all that is pertinent to this question. Although it is true that the admission of the register as evidence does not explicitly appear from the record, its admission implicitly appears in the court's dismissal of the objection raised by the defense.

It is clear, then, that none of the errors assigned was committed.

The assignments of error in the second case, No. 9466, are, as we said, four. In the first, passion, prejudice, and partiality are imputed to the lower court; in the second it is urged that the lower court erred in not eliminating certain facts stated in the complaint that were not proved at the trial; the third assignment relates to the refusal of the lower court to admit as evidence accused's diploma of Dental Prosthesis, and the refusal to rule that said diploma conferred upon the accused the right to practice dental surgery; and the fourth assignment states that the lower court erred in concluding that the accused had acted with malice.

None of these errors was committed.

We have examined the transcript of the evidence and we have been unable to find therein any trace of passion, prejudice, or partiality on the part of the lower court. Section 13 of Act No. 31 of 1929, which is applicable to this case, provides that any person who, not being legally authorized to practise dental surgery, shall practise it or who shall violate the provisions of this act, shall be guilty of misdemeanor. Section 12 provides that under the terms of this act, any person shall be considered as practicing dental surgery who maintains, exhibits, or operates in an office equipped with dental instruments used in the practice of dental

surgery, this being the infringement which was charged in the complaint and proved at the trial.

The evidence submitted by the State consisted of the testimonies of Vicente Rivera, Rafaela Narváez, Anselmo Torres, and María Adorno. From such testimonies we must conclude that when the house of Juan Parés, in Betances Street, Vega Baja, was searched, several persons, one of whom was sitting on a chair having her mouth examined by the accused, and others waiting, were found in the room which was being used as an office. The room in question was being used by the accused to perform dental work, and it was there that the instruments mentioned in the complaint were seized. All these instruments were of the kind used in the practice of dental surgery. On the day the house was searched, several clients arrived at the office to arrange for dental work with the accused.

The evidence submitted by the accused consisted of his own testimony. He said that he was a minor surgeon at the Municipal Hospital of Vega Baja, and was engaged in dental prosthesis. As a minor surgeon he was authorized to operate when said operations were not more than two centimeters deep, in the abdomen or the head, and he could perform oral fumigations and tooth extractions. In dental prosthesis he "Performed molding operations of the mouth without having to file nor improve any of the teeth at all; secure molds, make false teeth, and adjust them to the mouth." He testified with relation to the use given to each one of the instruments seized in his office, and said that dental prosthesis was a branch of dental surgery, and that he did not hide when exercising it because he had received a diploma from the Board of Dental Schools of New York, which diploma he registered with the Health Board of the Island in the year 1921.

Granting that the accused was a minor surgeon and that he obtained the diploma to which he makes reference in his

testimony, even then, the crime was committed, because neither as a minor surgeon nor as a person authorized to practice dental prosthesis was he authorized to practice dental surgery, and it was in the last-mentioned practice that he was involved according to the evidence submitted.

"Prosthesis", in general, according to the *Diccionario Enciclopédico Hispano-Americano,* volume 17, page 444, is that part of surgical therapeutics which has as its object the artificial replacement of an organ that has been amputated in whole or in part, or the elimination of a deformity; and according to Webster's New International Dictionary, Second Edition, prosthesis is, with relation to surgery in general and dental surgery in particular, the addition to the human body of some artificial part, to replace one wanting, as a leg, eye, or tooth.

Dental prosthesis, therefore, is that part of the dental art which has as its object the substitution of one or more teeth for those that have had to be extracted, or that have fallen out as a consequence of any injury. Thus, a diploma evidencing the competency of a person in that branch cannot have the effect of authorizing that person to practice dental surgery in general.

Dental surgery includes dental prosthesis, but the latter does not include the former. As it was said in *Rex* v. *Cruikshanks,* 7 Alta. L. 92, 95, cited in 18 C. J. 487, "The science of dentistry like many others has advanced in later times, especially in the direction of preserving and repairing teeth and in substituting artificial teeth and we are entitled to take cognizance of what is common knowledge in this regard. It is contended that the manufacture and supplying of artificial teeth is a mechanical trade and does not come within the term 'practice of dentistry.' There may be a good deal of force in this argument in so far as it applies to the manufacture of artificial teeth, but the taking of impressions of the gums and the connecting of teeth in plates to fit the

gums and filling teeth are not acts which it can be said are not included in the term 'practice of dentistry.' "

The judgments appealed from must be affirmed.

Mr. Justice Travieso did not participate herein.